William G. **MANAX, M.D.** and **Manax Medical and Surgical Clinic, a Texas Partnership d/b/a Oak Street Medical Clinic, Plaintiffs,**

v.

**Lanelle L. McNAMARA; Rod S. Squires; Dale D. Williams; Denise Gamino; Cox Enterprises, Inc., d/b/a Cox Texas Publications, Inc.; Sue Pescaia; Cechoslavak Publishing Company, Inc. d/b/a the West News, Defendants.**

Civ. A. No. W–87–CA–014.

United States District Court,
W.D. Texas,
Waco Division.

May 1, 1987.

Peter H. Fulton, Hurst, Tex., for plaintiffs.

Marshall M. Searcy & Lori B. Finkelston, Rain, Harrell, Emery Young & Doke, Dallas, Tex., for defendant McNamara.

John L. Lancaster, III, Jackson, Walker, Winstead, Cantwell & Miller, Dallas, Tex., for defendants Squires and Williams.

David H. Donaldson, Jr., Graves, Dougherty, Hearon & Moody, Austin, Tex., for defendants Gamino and Cox.

Noley R. Bice, Jr., Waco, Tex., for defendants Pescaia and Cechoslavak.

### ORDER

WALTER S. SMITH, JR., District Judge.

On this date came on to be considered the motion of each Defendant to dismiss this cause. The motions are made pursuant to Rule 12(b) of the Federal Rules of Civil Procedure. The Court, having considered said motions, finds that they are meritorious and should be granted.

### I.

Plaintiffs, Dr. William G. Manax and Manax Medical and Surgical Clinic, a Texas Partnership d/b/a The Oak Street Medical Clinic, invoke this Court's jurisdiction under the RICO statute, 18 U.S.C. § 1961 *et seq.*, and the Civil Rights Act, 42 U.S.C. § 1981 *et seq.*, and assert pendent jurisdiction for a breach of contract claim, libel, slander and tortious interference with business. The basis for this action involves an alleged conspiracy to harm Plaintiffs' medical practice.

Dr. William G. Manax currently operates his medical clinic in the community of West, Texas where he is chief of surgery at West Community Hospital. At the time Dr. Manax associated himself with the hospital, Dr. Emsley Davis was an active surgeon on its staff. In 1980, Dr. Davis faced various allegations involving his professional competence. These allegations were investigated by Dr. Manax and a notice of

deficient patient care was given to Dr. Davis, who filed suit in this Court to prevent his removal from the staff. The attorney for Dr. Davis was Defendant Lanelle L. McNamara ("McNamara"). Defendant McNamara, during the defense of Dr. Davis, also initiated an investigation of Dr. Manax by obtaining his patient records and subsequently referred Dr. Manax's former patients to Defendant Attorneys Rod S. Squires and Dale D. Williams. The Plaintiff alleges that this referral was designed to encourage and solicit these attorneys to file suit against Dr. Manax for the purpose of harming his and the Medical Clinic's reputation and ability to practice medicine, as well as increase Manax's and the Clinic's medical malpractice premiums. Defendants contend that none of the malpractice actions brought on behalf of the individual clients have been found to be frivolous or to have been brought in bad faith.

The Plaintiffs further allege that McNamara filed complaints with the Texas State Board of Medical Examiners and also encouraged and directed others to file such complaints, the effect being to urge the revocation of Dr. Manax's license. Plaintiffs also complain that McNamara urged and coordinated false and misleading press articles adverse to Dr. Manax in concert with Defendant Denise Gamino, individually and as an agent, servant and employee of Defendant Cox Enterprises; Defendant Sue Pescaia, individually and as an agent, servant and employee of Defendant Cechoslavak Publishing Co., Inc., as well as Defendants Squires and Williams. However, the articles printed in *The Austin American Statesman* and *The West News* were accounts of Dr. Manax' professional life and the Defendants claim that they were pieced together from confidential records, court papers and numerous interviews. The Plaintiffs then allege that the dissemination of these articles involved interstate and intrastate commerce through the United States mail and through communication by telephone.

Defendant McNamara, as mayor of Waco, is alleged to have organized a conspiracy consisting of all of the Defendants and having as its purpose the concerted effort to deprive Dr. Manax of his license to practice in Texas and the right to practice anywhere in the future. The Plaintiffs contend that this effort has caused them to be the victims of a pattern of racketeering activity. Specifically, the Plaintiffs believe the Defendants constitute an illegal racketeering enterprise within the meaning of the Racketeering Influenced Corrupt Organization Act, (RICO), and that they have evidenced an ongoing pattern of unlawful racketeering activity by continuing to file lawsuits against Dr. Manax and by consistently urging the Texas State Board of Medical Examiners to conduct hearings against Dr. Manax. Further, the Plaintiffs allege that their civil rights have been violated because of the nature and extent of the Defendants activities, through the leadership of Defendant McNamara.

## II.

A motion to dismiss pursuant to Rule 12(b) of the Federal Rules of Civil Procedure has been filed by each Defendant. When considering these motions, the Court must look to established law which holds that a motion to dismiss for failure to state a claim should not be granted unless it appears that the Plaintiff would not be entitled to any relief under any set of facts which could be proved in support of his claim. *United States v. Uvalde Consolidated Independent School District*, 625 F.2d 547 (5th Cir.1980). The general view is that motions to dismiss are not favored and are granted sparingly. *Rios v. Dillman*, 499 F.2d 329 (5th Cir.1974). Upon receipt of the motion, the complaint should not be dismissed merely because the Plaintiff's allegations do not support the particular legal theory advanced. On the contrary, the Court will examine the allegations to determine whether they call for relief on any possible theory. *Williams v. United Credit Plan of Chalmette, Inc.*, 526 F.2d 713 (5th Cir.1976). Furthermore, a claim should not be dismissed merely because all of the elements that give rise to a legal basis for recovery have not been stated. *Id.* at 715.

There is no view, however, that motions to dismiss for failure to state a claim should never be granted. When used with care, there is a time and a place for Rule 12(b) motions to dismiss. *Rios v. Dillman,* 499 F.2d 329, 330 (5th Cir.1974). Specifically, the dismissal should be granted where it is certain that the Plaintiff cannot possibly be entitled to relief under any set of facts which could be proved in support of the allegations of the complaint. *International Erectors v. Wilhoit Steel Erectors and R. Service,* 400 F.2d 465 (5th Cir.1968).

### III.

The Court will now analyze and decide each of the Plaintiff's claims as it relates to each Defendant.

### Rico Allegations

■ The Plaintiffs allege that they are victims of a pattern of racketeering activity conducted by the Defendants and other persons and entities. They further allege that for a period of time beginning in 1981, Defendants have participated, engaged in and directed the affairs of an illegal racketeering enterprise within the meaning of the Racketeer Influenced and Corrupt Organizations Act through an ongoing pattern of unlawful racketeering activity. The initial question, therefore, is whether the Defendants have violated the Racketeer Influenced and Corrupt Organizations Act (RICO). RICO provides a private civil remedy to recover treble damages for violation of its substantive provisions, provided that the Plaintiff can demonstrate he has been injured in his business or property by the conduct constituting the violation. 18 U.S.C. § 1964(c). In their complaint, the Plaintiffs allege a violation of 18 U.S.C. § 1962(c), which requires (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. The Plaintiff must, of course, allege each of these elements to state a claim. *Sedima, S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. 479, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 436 (1985). The criminal actions allegedly underlying the Plaintiffs' claims of racketeering activity are the predicate acts of mail fraud and wire fraud. 18 U.S.C. § 1341 and § 1343. To state a proper claim, it is only necessary that the Plaintiffs show the Defendants' actions and activities arguably come within the purview of Section 1341. An analysis under the mail fraud section necessitates a broad interpretation of the language of the statute and is to be construed in light of the statute's manifest purpose to prohibit all attempts to defraud by any form of misrepresentation. *Durland v. United States,* 161 U.S. 306, 313, 16 S.Ct. 508, 511, 40 L.Ed. 709 (1896). Inherent in any scheme to defraud is falsehood of some kind. Further, schemes to defraud under the mail fraud statute have fallen into two broad categories: 1) schemes which are intended to defraud individuals of money or other tangible property interests and 2) those which operate to deprive individuals of significant, often constitutionally protected, intangible rights. *United States v. McNeive,* 536 F.2d 1245 (8th Cir.1976).

However, the alleged predicate acts of the Defendants obviously do not come within this broad reading of Section 1341. The Plaintiffs allege specifically that the Defendants have used the mail and other means and instrumentalities of interstate commerce to deliver written statements defaming Dr. Manax and to deliver illegally obtained medical records and Texas State Board of Medical Examiners' documents. Also central to the Plaintiff's mail fraud contention is that Defendant McNamara urged and coordinated false and misleading press articles harmful to Dr. Manax in concert with Defendants Gamino, *The Austin American Statesman,* Pescaia, *The West News,* as well as Defendants Squires and Williams. This alleged scheme, when reduced to its essentials, appears to be one to damage the reputation of Dr. Manax and is in no way a "fraud" on his tangible or intangible rights, as that word is classically and generally defined. The Plaintiffs in contravention argue that damage to reputation may constitute mail or wire fraud. *United States v. Winans,* 612 F.Supp. 827 (D.C.N.Y.1985). In *Winans,* several newspaper employees were charged with participating in a scheme to trade in securities based on information misappropriated from the newspaper. The actual fraud in the

case which supported a mail fraud prosecution was the misappropriation of confidential information from the employer by the employees, which was a violation of the employees' fiduciary duty and their duty to disclose material information to their employer. The harm to the employer resulting from this fraud was the actual reputational injury suffered by the newspaper. In short, actionable mail fraud occurs when there is an actual identifiable scheme to defraud which results in reputational injury. However, that situation is not present in the instant case. All that is presented to this Court is the Plaintiffs' contentions of the results of the purported scheme, namely the reputational injury suffered by the Plaintiffs. There is no allegation concerning the identification of the actual scheme to defraud which led to the reputational loss. Absent this showing of a scheme to defraud, *Winans*, which is relied upon by the Plaintiffs, is unpersuasive.

Based upon the language and underlying policy of § 1341, the Court finds that the Defendants Squires, Williams and McNamara's actions pertaining to the initiation of lawsuits, and Defendants Gamino, Cox Enterprises, Pescaia and *The West News'* actions pertaining to printing and distributing news articles, do not constitute a scheme or artifice to defraud within the criminal statute.

Plaintiffs further suggest that the requisite RICO predicate acts might be established through alleged violations of 18 U.S.C. §§ 1951 and 1952. Analyzing § 1951, commonly known as the Hobbs Act, it is apparent that the main purpose of Congress in enacting the act was to combat labor racketeering. Therefore, it is not surprising that most of the cases arising under the Hobbs Act involve the use by corrupt labor union officials of their power to order picketing or strikes to extract money from employers for their own benefit. *United States v. Brecht,* 540 F.2d 45, 51 (2nd Cir.1976). Another line of Hobbs Act cases involves the use of power by public officials, from mayors to policemen, to shake down persons by refusing them the right to do business unless they pay tribute. *See, e.g., United States v. Sopher,*

362 F.2d 523 (7th Cir.), *cert. den.,* 385 U.S. 928, 87 S.Ct. 286, 17 L.Ed.2d 210 (1966). In each of the foregoing categories, the activities are the familiar tools of organized crime. *United States v. Brecht,* 540 F.2d at 52. It is true, however, that the definition of extortion under this section is not limited to prosecutions involving organized crime. *United States v. Daley,* 564 F.2d 645 (2nd Cir.1977).

In the light of the foregoing rules, the Plaintiff contends that the Defendants have violated § 1951 in implementing their scheme to defraud through the soliciting and prosecuting of allegedly frivolous lawsuits, insurance fraud and the filing of unsubstantiated claims with the Texas State Board of Medical Examiners. The Plaintiff further alleges violations of § 1951 in the attempted use of the Texas State Board of Medical Examiners' complaint and hearing process to deprive Dr. Manax of his license to practice under color of official right, as well as a claim that Defendant McNamara used her office as mayor of Waco, Texas to deprive Dr. Manax of his right to practice and to a fair trial under color of state law.

These allegations do not state a proper claim within the ambit of § 1951. Extortion is defined in the Hobbs Act to mean "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." None of the Defendants' activities involves any use of actual or threatened force, so the Plaintiff must rely on the fact that some property of his was obtained, with his consent, and under color of official right. However, nowhere in the Plaintiffs' pleadings is there an assertion that property was in fact taken with consent. Further, there is only the bare assertion, conclusory in nature, that the acts of the Defendants were performed under color of official right. The fact that the use of political or official office to obtain payment is the crux of the statutory requirement of "under color of official right," and that the pleadings do not demonstrate a nexus between the official office and the alleged extortion ac-

tivities, both operate to foreclose the Plaintiff from stating a proper claim under § 1951.

Likewise, § 1952, commonly known as the Travel Act, also cannot qualify in this case as a RICO predicate act. The Travel Act prohibits travel in interstate commerce or use of interstate facilities to promote or carry on certain unlawful activities. 18 U.S.C. § 1952. The act "reaches anyone who travels interstate or uses an interstate facility to facilitate an unlawful activity and thereafter performs or attempts to perform an act in aid thereof." *United States v. Jones,* 642 F.2d 909, 913 (5th Cir.1981). The Plaintiffs allege that the Defendants violated § 1952 by distributing proceeds of unlawful activities through the United States mail. Again, all that is pled to support this claim is the bare assertion itself, with no indication of the source of the proceeds or where they were distributed. Therefore, the Plaintiffs have not made a proper claim under § 1952 to establish a bona fide RICO predicate act.

Another necessary requirement to a RICO claim is the proper allegation by the Plaintiff of the existence of an enterprise. 18 U.S.C. § 1962(c). A RICO enterprise must have an ongoing organization, with associates functioning as a continuing unit. *Shaffer v. Williams,* 794 F.2d 1030, 1032 (5th Cir.1986). An "ongoing organization" is shown by the existence of a decision making structure, whether hierarchical or consensual. *Id.* at 1032. Further, to establish an "association in fact" enterprise under 18 U.S.C. § 1961(4), the Plaintiffs must show "evidence of an ongoing organization, formal or informal, and ... evidence that the various associates function as a continuing unit." *United States v. Turkette,* 452 U.S. 576, 583, 101 S.Ct. 2524, 2528, 69 L.Ed.2d 246 (1981). However, the enterprise must be an entity separate and apart from the pattern of activity in which it engages. *Atkinson v. Anadarko Bank and Trust Co.,* 808 F.2d 438, 441 (5th Cir. 1987).

The Plaintiffs allege that there was an association in fact which qualifies as a RICO enterprise. Defendant McNamara is the head of this organization, Defendants Squires and Williams, along with Gamino, Pescaia, *The West News* and Cox Enterprises, complete the enterprise. The association is claimed to have operated in the following manner. Defendant McNamara referred Dr. Manax' former patients to attorneys Squires and Williams, allegedly encouraging them to file suit against Dr. Manax for the purpose of harming him and his ability to practice medicine. Also, as "kingpin" of the organization, Defendant McNamara allegedly urged and coordinated that press articles harmful to Dr. Manax be published by Defendants Gamino, Cox, Pescaia and *The West News.* Specifically, the referral of potential claimants against Dr. Manax by McNamara, the initiation of lawsuits by Squires and Williams against Dr. Manax, and the writing and subsequent printing of news articles by newspaper publishers which were harmful to Dr. Manax are the underlying activities of the organization.

The Plaintiffs have not met their burden of pleading an ongoing organization with associates functioning as a continuing unit. *Shaffer v. Williams,* 794 F.2d at 1032. The claim is made that all of the Defendants share the common purpose of attempting to harm Dr. Manax by putting his medical practice to an end. The only allegation that demonstrates any sort of "unit" structure, however, is a loose analogy to a Mafia family with Defendant McNamara as the "Godmother" and all other Defendants as family members. There is no other indication of a decision-making structure. Also, it is not clear how, or even if, the enterprise is separate from the Defendants and from the racketeering activity engaged in. No facts are alleged which lend support to the separate existence of a RICO enterprise. Without this demonstration that the organization is a separate and distinct entity from the activity it engages in, even informally, then it is evident that the enterprise element of § 1962(c) has not been met.

The final element that the Plaintiffs must demonstrate to maintain this RICO cause of action is a showing that the De-

fendants conducted the "enterprise" through a pattern of racketeering activity. The questions of whether the Defendants committed the requisite predicate acts, and whether the proper RICO enterprise was pleaded, both have been decided above. In the interest of completeness, however, the Court now turns and addresses the question of whether the Defendants' acts come within the statutory language needed to produce a "pattern." The United States Supreme Court noted that a "pattern of racketeering activity" comtemplates not only a relationship among criminal acts, but also a continuity of activity. *Sedima, supra.* In light of the Court's pronouncement, many courts have applied the "continuity plus relationship test" to find a pattern. The test has been developed so that the relationship prong is satisfied with a showing of several related RICO predicate acts, for instance mail and wire fraud, but the continuity prong requires racketeering activities in criminal episodes or schemes other than the one pending before the Court. *See e.g., Superior Oil Co. v. Fulmer,* 785 F.2d 252, 257 (8th Cir.1986); *Fleet Management Systems, Inc. v. Archer-Daniels-Midland Co.,* 627 F.Supp. 550, 558–59 (C.D.Ill.1986); *Brent Liquid Transport, Inc. v. GATX Leasing Corp.,* 650 F.Supp. 467 (N.D.Miss.1986); *Allington v. Carpenter,* 619 F.Supp. 474, 478 (C.D.Cal. 1985). Also, the Fifth Circuit has noted that the Supreme Court in *Sedima* criticized prior decisions holding that a series of acts in furtherance of one criminal scheme constitutes a pattern. *Smoky Greenhaw Cotton Co. v. Merrill, Lynch, Pierce, Fenner, and Smith, Inc.,* 785 F.2d 1274, 1281–82 n. 7 (5th Cir.1986).

The obvious purpose of the continuity plus relationship formulation is to narrow the "pattern" concept to reach RICO's intended goal—enterprises which utilize similar methods of operation and participants whose victims are harmed in similar manners by the operation of the particular racketeering. It is this kind of a continuous, ongoing enterprise that poses the "threat of continuing criminal activity" and that civil RICO has as its primary target. *Fleet Management Systems, Inc. v. Arch-*

*er-Daniels-Midland Co.,* 627 F.Supp. at 559.

The Court now turns to the Plaintiff's complaint, wherein it is asserted that the Defendants, as an enterprise, have engaged in numerous schemes to defraud, the publication of numerous news articles, the filing of lawsuits, the filing of complaints with the Texas State Board of Medical Examiners, exclusion from the County Medical Society and numerous other acts to defraud, all of which are interrelated and coordinated in such a way as to meet the test of "continuity plus relationship." Analysis of the Plaintiff's claims is hindered somewhat because of the conclusory nature of most of the allegations. However, the essence of the Plaintiff's complaint and supporting briefs is that there is one scheme to "defraud" him of his medical practice through the commission of various alleged RICO predicate acts. For purposes of this analysis, allegations of predicate acts will be considered true, and would, therefore, relate to the one scheme. The problem is that there is only one plausible and identifiable scheme. The Plaintiff relies on *R.A.G.S. Couture, Inc. v. Hyatt,* 774 F.2d 1350 (5th Cir.1985), for the proposition that two related acts of mail fraud constitute a "pattern" under the RICO statute. The Fifth Circuit in that case applied only the relationship prong of the *Sedima* test in its holding and, consequently, wholly ignored the concept of continuity emphasized by Congress and the Supreme Court. *Id.* at 1355. Since that decision, however, the Fifth Circuit has more recently indicated that District Courts should look carefully at the "pattern" element in the light of the continuity plus relationship test. *Smokey Greenhaw Cotton Co.,* 785 F.2d at 1280 n. 7. The Court must follow the guidance of the Fifth Circuit and therefore finds that the allegations involve only a single scheme and thus fail to state a pattern of racketeering activity.

In sum, the Plaintiffs have failed to allege a cause of action under the § 1962(c) RICO statute. The requisite elements of RICO, that is, the commission of RICO predicate acts, by an enterprise, and

through a pattern of racketeering activity, have not been met by the Plaintiff's pleadings.

## RICO CONSPIRACY

■ The Plaintiffs also allege that the Defendants have violated 18 U.S.C. § 1962(d), which prohibits any conspiracy to engage in the prohibited activities listed in § 1962(c). In order to properly assert a conspiracy under § 1962(d) to violate § 1962(c), it is not sufficient to demonstrate that an agreement exists between the Defendants to commit a predicate act. There must be an agreement to participate, directly or indirectly in the affairs of the enterprise through the commission of two or more predicate crimes. *United States v. Smith,* 574 F.2d 308 (5th Cir.1978). Further, the Fifth Circuit has established that a viable § 1962(d) claim requires proof of the enterprise and racketeering elements plus the Defendants' objective manifestation of intent to participate, either directly or indirectly, in the affairs of the enterprise. *United States v. Cauble,* 706 F.2d 1322 (5th Cir.1983).

It is axiomatic, therefore, that there can be no proper § 1962(d) conspiracy allegation without a plausible assertion that a RICO enterprise exists and that it in fact engaged in a pattern of racketeering activity. This Court has already determined that the Plaintiff's pleadings fail to sufficiently allege these essential elements. The Plaintiff has supported his position with an abundance of case law that involves common civil conspiracy, however, this does not suffice to allege a § 1962(d) RICO conspiracy. Finding nothing in the Plaintiff's pleadings that properly asserts a RICO enterprise or a pattern of racketeering activity, the RICO conspiracy contention must fail.

### Civil Rights and Fourteenth Amendment Claims

The Plaintiffs invoke 42 U.S.C. § 1983 in conjunction with 28 U.S.C. § 1343 as a jurisdictional basis for action brought in this Court. Using the analysis provided by *Daigle v. Opelousas Health Care, Inc.,* 774 F.2d 1344 (5th Cir.1985), this Court finds jurisdiction and will consider the Defendants' motions to dismiss these claims.

The Plaintiff alleges that he has suffered deprivation of his constitutionally or statutorily protected civil rights at the hands of the Defendants. As a remedy the Plaintiff has turned to the Civil Rights Act of 1871, specifically invoking 42 U.S.C. § 1983, § 1985(2), § 1985(3) and § 1986.

### A.

■ It is axiomatic that in order to be entitled to relief under 42 U.S.C. § 1983, a Plaintiff must show that he was deprived of a right secured to him under the Constitution or federal law, and that the deprivation occurred under color of state law. *Flagg Brothers, Inc. v. Brooks,* 436 U.S. 149, 155–56, 98 S.Ct. 1729, 1732–33, 56 L.Ed.2d 185 (1978). The phrase "under color of state law" found in 42 U.S.C. § 1983, reflects the "state action" requirement of the fourteenth amendment, consequently, both phrases express the same legal principle. *Lugar v. Edmonson Oil Co., Inc.,* 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982); *Greco v. Orange Memorial Hospital Corp.,* 513 F.2d 873, 877, n. 7 (5th Cir.1975). The Plaintiff argues that Defendant McNamara used her office as mayor of Waco, Texas to deprive Dr. Manax of his right to practice and to a fair trial under color of state law. While it is true that misuse of power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, may be the basis of "state action," *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), the complaint of the Plaintiff does not even allege that Defendant McNamara was acting in her official capacity or with the power of the city in her alleged contacts with the other Defendants. There is no assertion that Defendant McNamara used her official position or status in any way to complete the alleged acts subscribed to her. The conclusory allegation that Defendant McNamara was acting "under color of state law" is insufficient to state a claim under § 1983, and must therefore be dismissed.

All of the other Defendants are private persons or privately owned corporations. Under these circumstances, a general state involvement with the individuals or corporation is not sufficient to support a claim. *Daigle, supra.* The relevant inquiry is whether or not there is a sufficiently close connection between the state and the challenged conduct for the actor to be treated as an agent of the state or of the conduct to be attributed to the state. *Sims v. Jefferson Downs Racing Ass'n, Inc.,* 778 F.2d 1068 (5th Cir.1985). Further, a state is not responsible for a private party's decisions unless it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the state. *Blum v. Yaretsky,* 457 U.S. 991, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982). There is no allegation in the pleadings that Defendant McNamara's association with the other Defendants, in referring lawsuits or in giving information to the newspaper publishers, rises to the level of state action necessary to sustain a § 1983 action. Therefore, the § 1983 action as to all of the Defendants must be dismissed.

### B.

■ The Plaintiff also brings an action under 42 U.S.C. § 1985(3). This statute creates a cause of action for damages against private persons who conspire to deprive a plaintiff of his constitutional rights. *Sims v. Jefferson Downs, Inc.,* 611 F.2d 609 (5th Cir.1980). The cause of action so created does not require state action; however, as an essential element "there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge,* 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971). There is ample case law to strongly suggest that physicians are not a protected class under § 1985(3). *See e.g., Ward v. St. Anthony Hospital,* 476 F.2d 671, 676 (10th Cir.1973); *Miller v. Indiana Hospital,* 562 F.Supp. 1259 (W.D.Pa.1983); *Feldman v. Jackson Memorial Hospital,* 509 F.Supp. 815, 823–24 (S.D.Fla.1981). The assertion by the Plaintiffs of a proper class-based animus on the basis of the carpetbagger analogy arising during the late 1800's when northerners came to the south and were excluded for racial, political and economic reasons does not persuade this Court that this is a colorable claim. Without a judicially recognized class-based animus, the Plaintiff's § 1985(3) action must be dismissed.

The Plaintiff's 42 U.S.C. § 1986 claim may be handled quickly also, based on the above decision concerning the § 1985(3) claim. The § 1986 claim for failure to prevent a deprivation of equal protection in violation of § 1985 is interrelated and dependent upon a cognizable § 1985 claim. *Hamilton v. Chaffin,* 506 F.2d 904, 914 (5th Cir.1975). Therefore, since the Plaintiffs did not present a viable § 1985(3) claim, they are precluded from asserting a § 1986 action and it must be dismissed also.

Plaintiffs allege the Defendants conspired to obstruct justice in violation of § 1985(2) by threatening Dr. Manax, his family, and his property in an attempt to force Dr. Manax to leave his practice in West, Texas. The Plaintiffs further allege that the Defendants have and will conspire to prevent this matter from coming to trial. The first part of § 1985(2) proscribes conspiracies that interfere with the administration of justice in federal court, and the second part proscribes conspiracies that interfere with the administration of justice in state court. *Kush v. Rutledge,* 460 U.S. 719, 725, 103 S.Ct. 1483, 1487, 75 L.Ed.2d 413 (1983). Appellant fails to state a claim under either clause of § 1985(2).

The second part of § 1985(2) is directed at conspiracies to deprive equal protection, as is § 1985(3), and the equal protection language in both sections is paralleled. *Daigle v. Gulf State Utilities Co., No. 2286,* 794 F.2d 974 (5th Cir.1986). Therefore, the class-based animus requirement of § 1985(3) also applies to claims under the second part of § 1985(2). *Kimble v. D.J. McDuffy, Inc.,* 648 F.2d 340, 346 (5th Cir.1981). As discussed above, the Plaintiff does not meet the class-based animus requirement so they are foreclosed from stating a claim under the second part of § 1985(2).

The Plaintiff also does not state a claim under the first part of § 1985(2). Although the first part of § 1985(2) does not require race or class-based animus, *Kush v. Rutledge*, 460 U.S. at 727, 103 S.Ct. at 1488, it does require that there has been an interference with the federal court system. *Seeley v. Brotherhood of Painters, Decorators & Paper Hangers of America*, 308 F.2d 52, 58 (5th Cir.1962). Plaintiff's allegations plainly do not make this assertion and therefore do not fall within the confines of § 1985(2).

### State Claims

Having determined that the Plaintiffs' claims under RICO and the civil rights statutes which supported federal jurisdiction should be dismissed, in light of *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), and *Daniels v. All Steel Equipment, Inc.*, 590 F.2d 111 (5th Cir.1979), this Court declines to exercise pendent jurisdiction and therefore dismisses the state claims without prejudice. Accordingly,

IT IS, THEREFORE, ORDERED that the Defendants' Motions to Dismiss be and are hereby GRANTED and this cause of action is hereby DISMISSED without prejudice to refiling in state court.