**Joel T. RADMAN, an individual, Plaintiff,**

v.

**JONES MOTOR COMPANY, INC., a Pennsylvania corporation, Defendant.**

**Civil Action No. 94–1148.**

United States District Court, W.D. Pennsylvania.

Feb. 8, 1996.

Robert L. Potter, Strassburger, McKenna, Gutnick & Potter, Pittsburgh, PA, Phillip D. Gaujot, Morgantown, WV, for plaintiff.

Beth Ann Slagle, Frederick J. Francis, Meyer, Unkovic & Scott, Pittsburgh, PA, for defendant.

## MEMORANDUM OPINION

LEE, District Judge.

Before the Court are the following motions for summary judgment:

(i) **Motion for Summary Judgment of Defendant, Jones Motor Company, Inc.** (Document No. 26);

(ii) **Motion of Plaintiff, Radman, for Summary Judgment Pursuant to F.R.C.P. 56** (Document No. 28).

The motion for summary judgment of the defendant, Jones Motor Company, Inc., will be granted and the motion for summary judgment of the plaintiff, Radman, will be denied.

### Background

The plaintiff, Joel T. Radman, brings this civil action against the defendant, Jones Motor Company, Inc., ("Jones") alleging that Jones is liable for a judgment obtained by plaintiff against the Estate of Jeffrey Peden, Deceased, ("Peden") in an earlier action filed in this court at Civil Action No. 88–2578 for damages resulting from serious personal injuries sustained by the plaintiff on November 7, 1987, when the automobile which he was operating on the Pennsylvania Turnpike collided with a tractor trailer owned and operated by Peden.

At the time of the collision, Peden had leased the tractor trailer to Jones pursuant to a written trip lease agreement and was operating the tractor trailer in interstate commerce under permits issued by the Interstate Commerce Commission to Jones as a motor carrier operating under the Interstate Commerce Act, 49 U.S.C. § 10101, *et seq,* and the regulations promulgated thereunder by the Interstate Commerce Commission ("ICC"). 49 C.F.R., § 1000, *et seq.*

In order to obtain operating authority from the Interstate Commerce Commission, Jones complied with all applicable ICC regulations, including its obtaining and filing with the ICC proof of financial responsibility. Specifically, Jones filed with the ICC a surety bond in the amount of $1 million which was issued by the Protective Insurance Company, as surety and which named Jones as the principal. In addition, Jones obtained personal injury and property damage liability insurance from Protective Insurance Company which provided coverage of up to $9 million, but with Jones retaining self-coverage of $2 million.

The plaintiff concedes that under the terms of that liability policy, Peden, while operating under the trip lease agreement with Jones, was not "an insured" and therefore the policy provided no coverage for either Peden or his estate. (Plaintiff's Statement of Material Facts Established Without Genuine Dispute, ¶ 21, Document No. 30).

The trip lease agreement between Peden and Jones contained the following provisions:

With regard to indemnification, the trip lease provided:

12. The LESSOR [Peden] shall hold LESSEE [Jones] harmless, defend and indemnify the LESSEE [Jones] for any loss, damage, or expense which may be incurred by the LESSEE [Jones] or anyone acting in his behalf under this lease.

With regard to insurance, the trip lease provided:

13. The LESSEE [Jones] shall provide Public Liability and Public Property damage insurance to the extent and in the limits required by law or lawful regulation while the equipment is being operated in accordance with the terms of this lease. No uninsured motorist protection shall be afforded by LESSEE except when such coverage is made compulsory by law. This paragraph in no way alters, modifies or limits the duties, obligations and/or the responsibilities of LESSOR as set forth in Paragraph 12 above.

In the initial complaint in the underlying action, plaintiff did not include Jones as a defendant. However, in August 1989, approximately four years after the date of the accident and two years, nine months after the date that action was commenced in this Court, plaintiff sought to add Jones as a defendant pursuant to Federal Rule of Civil Procedure 15(c).

On January 28, 1992, the Court entered an order denying plaintiff's motion to amend for the reason that the joinder was barred by the applicable Pennsylvania State of Limitations of two years. The plaintiff did not appeal the Court's determination in that regard to the United States Court of Appeals for the Third Circuit.

After a jury verdict of $1.3 million was returned for plaintiff, Peden filed post-trial motions which were denied by the Court and which determination was affirmed on appeal to the United States Court of Appeals for the Third Circuit.

Plaintiff originally alleged in the instant complaint that Jones is liable for the damages sustained by him because (i) the Interstate Commerce Act holds Jones responsible for the judgment entered solely against Peden; (ii) the trip lease required Jones to procure insurance coverage for Peden and, as a third-party beneficiary of the trip lease, Radman is entitled to recover from Jones since Jones failed to provide insurance coverage for Peden; (iii) under the doctrine of *respondeat superior,* Jones, as master, is liable not only for the acts of, but also for the judgment obligations entered against Peden,

its servant; (iv) Jones assumed the status of an insurer, and, in failing to satisfy the judgment entered against Peden, Jones acted in bad faith; and (v) Jones fully participated in and controlled the defense of the *Radman v. Peden* action and consequently is responsible to pay the judgment entered against Peden.

However, in plaintiff's response to Jones' motion for summary judgment, he narrows his theory of liability of Jones as follows:

In the Motion for Summary Judgment filed by Jones Motor Company, counsel for Jones Motor Company discusses *all* theories set forth in Radman's complaint and amended complaint in this case. We wish to make it clear to this Court that Radman hereby withdraws all theories of liability asserted in his complaint and amended complaint *except* the theory of liability set forth in Radman's pending Motion for Summary Judgment and brief in support of motion for summary judgment. (Emphasis in original).

The plaintiff's present theory of recovery is that: (i) Jones is liable under the Interstate Commerce Act, 49 U.S.C. § 11107, for plaintiff's damages caused by Peden while operating his tractor trailer under the written trip lease agreement with Jones and transporting a load of steel under the ICC certificates of authority issued to Jones; (ii) Jones participated in, controlled and directed the legal defense of Peden in the underlying action at Civil Action No. 88–2578 (W.D.Pa.) and it is bound under *res judicata* by the issues actually litigated in that case, *i.e.,* (a) Peden was negligent, (b) Radman was not contributorily negligent, (c) harm was proximately caused to plaintiff, and (d) the amount of damages was $1.3 million; (iii) that the only issue not actually litigated in the underlying action was the question of whether Peden was operating his tractor trailer at the time of the accident under the trip lease and was transporting steel in interstate commerce under the ICC permits issued to Jones, but that there is no dispute and therefore, Jones is not entitled to a jury trial on that single undisputed issue;[1] and (iv) there

---

1. For the purpose of deciding the cross motions for summary judgment, the Court has assumed

that Peden was transporting a load of steel at the

is no Statute of Limitations applicable which bars this action which is brought under the Interstate Commerce Act, 49 U.S.C. § 11107.

In support of its motion for summary judgment and in opposition to plaintiff's motion for summary judgment, Jones asserts that the only issue this Court need resolve is whether the Pennsylvania Statute of Limitations expired on November 5, 1989, so as to preclude plaintiff from maintaining this present action against it.

Since obtaining the judgment against Peden, the plaintiff, in an unsuccessful effort to obtain satisfaction of his judgment, issued execution which was served on Jayeann R. Peden, Administratrix of the Estate of Jeffrey Peden, Deceased,[2] and issued interrogatories in aid of execution directed to Jones and its liability insurance carrier.

Jones asserts that the plaintiff has filed various proceedings to attempt to satisfy his judgment: (i) the action against Jones in the *Radman v. Peden* proceeding; (ii) a legal malpractice claim against plaintiff's former counsel in the Court of Common Pleas of Allegheny County, Pennsylvania; (iii) an action based on conspiracy and tortious interference against the insurance carrier of plaintiff's former counsel; and (iv) this present action.

While it is undisputed that Jones retained and paid the fees of the law firm of Richard J. Mills and Associates, P.C. to represent itself and Peden in the underlying action, Jones neither agreed to indemnify Peden nor pay any judgment entered against Peden arising out of the use of Peden's tractor trailer pursuant to the trip lease.

Plaintiff's former counsel testified in his deposition that as a result of a conscious decision on his part, he did not name Jones as a defendant in the initial complaint in the underlying action. Moreover, he disclosed that he and his insurance carrier paid the legal costs of the Estate of Peden in its appeal to the United States Court of Appeals for the Third Circuit from the judgment entered for the plaintiff on the verdict against Peden's estate.

### Discussion

### Standards Governing Motions for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure reads, in pertinent part, as follows:

> [Summary Judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

In interpreting Rule 56(c), the United States Supreme Court has stated:

> The plain language ... mandates entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

An issue of material fact is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The court must view the facts in a light most favorable to the non-moving party and the burden of establishing that no genuine issue of material fact exists rests with the movant. *Id.* at 242, 106 S.Ct. at 2505. The "existence of disputed issues of material fact should be ascertained by resolv-

---

time of the accident under the trip lease with and under the ICC permits of Jones.

**2.** Jeffrey Peden died after the action was commenced and his estate was substituted as a defendant. His death was not related to the motor vehicle collision in which the plaintiff sustained his injuries. The Estate of Peden is without any assets.

ing 'all inferences, doubts and issues of credibility against the moving party.'" *Ely v. Hall's Motor Transit Co.*, 590 F.2d 62, 66 (3d Cir.1978), *quoting Smith v. Pittsburgh Gage & Supply Co.*, 464 F.2d 870, 874 (3d Cir. 1972). Final credibility determinations on material issues cannot be made in the context of a motion for summary judgment, nor can the district court weigh the evidence. *Josey v. Hollingsworth Corp.*, 996 F.2d 632 (3d Cir.1993); *Petruzzi's IGA Supermarkets, Inc. v. Darling–Delaware Co.*, 998 F.2d 1224 (3d Cir.1993).

 When the non-moving party will bear the burden of proof at trial, the moving party's burden can be "discharged by 'showing'—that is, pointing out to the District Court—that there is an absence of evidence to support the non-moving party's case." *Celotex*, 477 U.S. at 325, 106 S.Ct. at 2554. If the moving party has carried this burden, the burden shifts to the non-moving party who cannot rest on the allegations of the pleadings and must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986); *Petruzzi's IGA Supermarkets*, 998 F.2d at 1230. When the non-moving party's evidence in opposition to a properly supported motion for summary judgment is "merely colorable" or "not significantly probative," the court may grant summary judgment. *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2510–11. Rule 56(c) of the Federal Rules of Civil Procedure reads, in pertinent part, as follows:

> [Summary Judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

### Liability of Jones Under Federal Law

Distilled to its essence, the plaintiff's present claim is that under federal law, 49 U.S.C. § 11107(a)(4), the judgment which he obtained against the Estate of Peden should have the same effect "as if the [tractor/trailer] were owned by the motor carrier," Jones, and "[a]ll that is necessary for this Court to do is to hold that the ICC carrier has a primary federal liability for damages caused by the negligence of the operator of leased equipment as if that equipment were the motor carrier's own equipment, and that liability may be enforced against the ICC carrier after a judgment has been obtained against the owner/driver of the leased equipment where the ICC carrier had 'reasonable notice of the action [against the owner/driver] and an opportunity to assume or participate in the defense.'" (Plaintiff's Reply Brief Re: Plaintiff Radman's Motion for Summary Judgment, p. 9, Document No. 46).

Moreover, the plaintiff further likens Jones' role to the role of an insurance carrier, stating:

> It is difficult to understand what policy would require this court to hold that a liability created by Congress and the federal courts, the "statutory employer doctrine," would not be at least as strong as the contractually undertaken liability of an insurance company. *The simple fact of the matter is that Congress intended that Jones Motor Company, the ICC carrier, be the insurer of Peden with respect to the general public.* Congress did not intend that the judgment obtained against a lessor of equipment from an ICC carrier go unsatisfied where the ICC carrier is alive, well and solvent and actually defended the case against its lessor. (Emphasis supplied).

**I. Jones is not liable under the Interstate Commerce Act for the judgment which plaintiff obtained against Peden.**

 Initially, it is clear that Jones had no obligation under the Interstate Commerce Act, 49 U.S.C. § 10101, *et seq* ("ICA"), or the regulations promulgated thereunder, 49 C.F.R. § 1000, *et seq,* to supply insurance on behalf of Peden.[3]

---

**3.** Plaintiff appears to have abandoned this theory of recovery asserted in his complaint.

■ The explicit language of both the statute and the applicable regulation, 29 U.S.C. § 1097 and 49 C.F.R. § 1043.1, provides only that the ICC carrier must obtain and file with the ICC a surety bond, certificate of insurance or other security which is "sufficient to pay ... for each final judgment against the carrier for bodily injury to or death of an individual resulting from the negligent operation, maintenance or use of motor vehicles." *See also Carolina Cas. Ins. Co. v. Insurance Co. of North America,* 595 F.2d 128, 136 (3d Cir.1979) (The required "assurances of the motor carrier's financial responsibility are to be conditioned to pay, within the limits of coverage, *'any final judgment recovered against such motor carrier* [for personal injury or property damage] resulting from the negligent operation, maintenance or use' of vehicles operating under the carrier's ICC permit.") (Emphasis supplied.)

While the direct issue in *Carolina Cas. Ins. Co., supra,* was whether the insurance carrier for the lessor or the insurance carrier for the ICC carrier/lessee had the primary responsibility for defending and paying any settlement or judgment in the underlying tort action then pending in the state court, nevertheless, the holding of the court severely undercuts plaintiff's theories of federally-imposed liability on the part of Jones and Jones' federally-imposed status as an "indemnitor" or "insurer" of Peden.

There, an ICC-certified motor carrier leased a truck for which the lessor of the vehicle also provided a driver. The truck, while carrying goods on the lessee's business and displaying the lessee's ICC placards, was involved in a collision causing injury to members of the public. The injured parties sued the lessee, lessor and the driver for damages and the insurer of the lessor, Carolina Casualty Insurance Company, filed a declaratory judgment action seeking a deter-

mination that the ICC carrier's insurer, the Insurance Company of North America, and the lessee itself had the primary responsibility for defending and paying any settlement or judgment in the underlying tort action then pending in the state court. Additionally, in compliance with the ICA and the applicable ICC regulations, the ICC carrier/lessee in ¶ 3 of its trip lease with the lessor agreed to assume "all liability to ... the public, and responsibility to the ICC ..." 595 F.2d at 34. Moreover, as here, the ICC carrier/lessee was in effect a self-insurer for a portion of the loss resulting from any one occurrence while its insurance carrier's coverage extended to the amount of the loss in excess of the ICC carrier/lessee's self-insurance, and additionally, the driver and lessor agreed to indemnify the ICC carrier/lessee. However, unlike the situation here, under the policy of the insurance of the ICC carrier/lessee, the driver was an additional insured.

The district court granted summary judgment for Carolina Casualty Insurance Company holding that the primary responsibility of defending the underlying tort action and of paying for any settlement or judgment recovered by the personal injury plaintiffs in that suit was that of the ICC carrier/lessee because, under the "federal motor carrier regulations ... liability for damages to the [injured plaintiffs] is imputed to and imposed by law on [ICC carrier/lessee] ..." 595 F.2d at 132. The district court also held that the "hold harmless agreement, executed by the driver on behalf of the lessor and in favor of the lessee could not shift primary responsibility to the lessor or his carrier." *Id.* at 132.

In reversing the district court's order granting summary judgment, the Court of Appeals for the Third Circuit noted:

In the case before us, we find in particular that neither the federal motor carrier laws nor the (imputed) ICC endorsement[4] nor

**4.** The ICC regulations prescribe a uniform "endorsement for motor vehicle carrier policies" (ICC Form BMC90), which "provides that neither other contractual limitations nor violations of the insurance agreement by the insured 'shall relieve the [insurance] company from liability hereunder or from payment of any such final judgment [against the motor carrier-insured], irrespective of the final responsibility or lack

thereof ... of the insured." *Carolina Cas. Ins. Co.* at 136. While the parties do not specifically allude to this endorsement in their memoranda, it has been held that this endorsement may be read into a policy certified to the ICC as a matter of law. *Id.* at 137, n. 27. *See also Travelers Ins. Co. v. Transport Ins. Co.,* 787 F.2d 1133, 1139 (7th Cir.1986); *Hagans v. Glens Falls Ins. Co.,* 465 F.2d 1249, 1252 (10th Cir.1972).

paragraph 3 of the [lessee's] trip lease transferred to the [lessee] the duties to defend claims properly brought against others or to pay judgments entered against others. 49 U.S.C. § 315 ... and 49 C.F.R. § 1043–1(a) ... governing insurance and other assurances of motor carriers' financial responsibility, require only that the carrier give security "to pay any final judgment recovered against such motor carrier ..."; they mention nothing about defense of actions and nothing about payment of judgments recovered against other parties such as lessors. The regulation governing qualification as a self-insurer, 49 C.F.R. § 1043–5 ... requires only that the self-insuring motor carrier establish its ability "to satisfy its obligations for bodily injury liability ...," not any other party's obligations. Nor does the ICC endorsement operate to relieve the lessor or its insurer of any ultimate financial responsibility for claims or judgments against them.

*Id.* at 139.

Importantly, the Court of Appeals noted:

While a lessee cannot free itself of its federally imposed duties when protection of the public is at stake, *the federal requirements are not so radically intrusive as to absolve lessors or their insurers of otherwise existing obligations under applicable state tort law doctrines ... or under contracts allocating financial risk among private parties.* (Emphasis supplied.)

*Id.* at 137.

Whatever preemptive effect the ICC regulations may have in that limited field cannot form a basis for arguing that federal law also displaces state law doctrines governing master-servant relationships, respondeat superior, contribution among tortfeasors, or even ordinary negligence.... Indeed, so massive a disruption of the tissue of state law would be extraordinary in the American legal framework.

n. 31, *Id.* at 138.

Finally, the Court of Appeals noted:

We conclude that nothing in the federal motor carrier requirements, the trip lease, or the imputed ICC endorsement to [the lessee's] insurance policy would alter any party's rights or duties of contribution. *In particular, we make clear that those provisions do not impose on [ICC carrier], as lessee, the status of an insurer with respect to ... the lessor.* (Emphasis supplied.)

*Id.* at 143. *Cf. Occidental Fire and Cas. Co. of N.C. v. Brocious,* 772 F.2d 47, 52 (3d Cir.1985), (reaffirming the holding that the same federal requirements applicable here do not absolve lessors of otherwise existing obligations under contracts allocating financial risk among themselves as private parties); *Transamerican Freight Lines, Inc. v. Brada Miller Freight Systems, Inc., et al,* 423 U.S. 28, 96 S.Ct. 229, 46 L.Ed.2d 169 (1975), (holding that an indemnification agreement between a lessor and an ICC carrier/lessee shifting liability to the lessor did not contravene the ICC regulations which makes the lessee ultimately responsible for the operation of the vehicle.)

*See also Pratt v. Andrews,* 164 Ill.App.3d 606, 115 Ill.Dec. 659, 518 N.E.2d 184 (1987), *cert. denied,* 119 Ill.2d 574, 119 Ill.Dec. 397, 522 N.E.2d 1256 (1988) (An ICC motor carrier is not responsible for any judgment ultimately obtained against the driver of a vehicle resulting from a collision after the two-year state statute of limitations for personal injuries had run.) *See also Wellman v. Liberty Mut. Ins. Co.,* 496 F.2d 131 (8th Cir. 1974). (ICA does not require motor carrier to carry insurance coverage for a lessor/driver of a vehicle which is leased to the motor carrier.)

In *Wellman,* an injured party obtained a default judgment against the lessor/driver of the vehicle leased to an ICC certified motor carrier. The injured party had initially brought suit against the carrier, but later dismissed the carrier from the suit and proceeded to obtain a default judgment solely against the owner and driver.

The injured party then instituted an action against the ICC carrier insurer on the basis that the carrier's insurer provided coverage for the judgments against the owner and driver of the leased vehicle. In rejecting these arguments, the court stated:

The relevant I.C.C. regulation on insurance, 49 C.F.R. § 1043 ... contains no provision which would require a motor carrier specifically to carry insurance affording liability coverage for judgments rendered solely against an owner/operator of a vehicle leased to the motor carrier, *Id.* at 138.

The following analysis of the *Wellman* court is most persuasive and is endorsed by this Court:

It is true that the cases clearly hold that I.C.C. regulations require that the motor carrier operating leased equipment be held liable to the public for negligent operation of leased vehicles. *See, e.g., Mellon Nat. Bank & Trust Co. v. Sophie Lines, Inc.,* 289 F.2d 473 (3d Cir.1961). In that regard, [the motor carrier] properly could have been held liable to the [injured party] in the original state court proceeding if [the driver of the leased vehicle] was proved negligent. Had the [injured party] obtained a state court judgment against [the motor carrier], the result in this case would have been different, for the insurance policy would clearly have covered [the motor carrier] as the 'named insured' even though its liability would be vicarious and statutorily derived.

[The injured party], however, after initially including the common carrier ..., in their state court action elected voluntarily to dismiss the action against [the motor carrier] and to continue it only against the defaulting defendants, [the driver and owner of the leased vehicle]. Since there was no judgment of liability against [the motor carrier], the regulations which, on the one hand, require insurance coverage for judgments against the carrier and, on the other, impose legal responsibility upon the motor carrier for the operation of leased vehicles, may not be read into the insurance policy to impose liability upon the insurer of the motor carrier in contravention of the precise, express terms of the policy.

We think that it is highly unfortunate that I.C.C. has not established a clearer requirement that motor vehicle common carriers' liability policies, filed pursuant to the Interstate Commerce Act, must extend coverage to the owner-operator of a leased vehicle to the same extent as that afforded to the lessee-common carrier. Under such a requirement, insurance coverage would extend to cover the vehicle driver at all times. But we emphasize that this insurance coverage problem would not arise where a plaintiff presses his suit against the I.C.C. carrier whose permit numbers are carried on a truck at the time of the accident.

*Id.* at 139 (emphasis added). *Accord American General Fire & Cas. Co. v. Truck Ins. Exchange,* 660 F.Supp. 557, 567 (D.Kan. 1987).

Neither federal law nor state law nor the trip lease make Jones either the indemnitor or the insurer of Peden. However, it is clear that under the indemnity provision in the trip lease agreement between Peden and Jones and under the common law of Pennsylvania, Peden, as the statutory employee of Jones,[5] had the duty to indemnify Jones for any judgment obtained against it as a result of Peden's negligent operation of the tractor trailer. *See Bainville v. Hess Oil V.I. Corp.,* 837 F.2d 128, 130, 131 (3d Cir.1988). (It is well settled that parties can allocate the financial responsibility for the consequences of negligence as they see fit, and the determination of the duty to indemnify, "according to elementary principles of contract law, is clearly a matter of the intent of the parties.").

*See also* the following Pennsylvania cases which establish an employer's right of indemnity against an employee for injuries caused by the employee's negligence: *Builders Supply Co. v. McCabe,* 366 Pa. 322, 325, 77 A.2d 368, 370 (1951) ("... if a tort is committed by the employee or the agent, recovery may be had against the employer or the principal on the theory of *respondeat superior,* but the person primarily liable is the employee or

5. *Carolina Cas. Co.,* 595 F.2d at 137, n. 29 ("Federal law in effect creates an irrebuttable presumption of an employment relationship between the driver and the lessee whose placards identify the vehicle.")

agent who committed the tort, and the employer or principal may recover indemnity for him for the damage which he has been obliged to pay."); *Ragan v. Steen,* 229 Pa.Super. 515, 331 A.2d 724 (1974); *Muldowney v. Middleman,* 176 Pa.Super. 75, 107 A.2d 173 (1954).

## II. Jones is not bound by the doctrine of *res judicata* to pay the judgment obtained against Peden's estate.

The plaintiff asserts that Jones participated in, controlled and paid for the defense of Peden and, therefore, is liable for the judgment entered against Peden's estate.

■ While Jones, though not a party to the underlying action, may be bound by the determination of the issues decided there as though it were a party because it controlled or substantially participated in the control of the defense of Peden, Restatement, Second, Judgments, § 39, nevertheless, particularly since Jones is neither an "insurer" nor an "indemnitor" of Peden either under the trip lease agreement or under federal or state law, Jones is not liable for the judgment which was never entered against it. For a discussion of the doctrines of *collateral estoppel* and *res judicata, see Bradley, et al v. Pittsburgh Board of Education, et al,* 910 F.2d 1172 (3d Cir.1990); *Charter Oak Fire Ins. Co. v. Sumitomo Marine and Fire Ins. Co., Ltd.,* 750 F.2d 267, 270 (3d Cir.1984).

The plaintiff's reliance on the holding in *Ransburg Corp. v. Automatic Finishing Systems, Inc.,* 412 F.Supp. 1357 (E.D.Pa.1976), Restatement, (Second), Judgments, § 39, Comment C and Restatement, (Second), Judgments, § 57 is misplaced.

In *Ransburg,* the owner of a patent brought an action against a manufacturer of an allegedly infringing device. The manufacturer exercised control over the defense of the defendant in a previous action also brought by the patent owner concerning identical patents. The court held that the judgment in the previous action was binding upon the manufacturer.

That court based its holding on § 84 of the Restatement, Judgments, now Restatement, (Second), Judgments, § 39. However, it is significant that the court in *Ransburg* found that the manufacturer had agreed with the defendant in the prior action that it would pay all litigation costs, including the fees of expert witnesses, and any damages which may be assessed against the defendant. Moreover, it is notable that the manufacturer, at his expense, retained trial counsel for the defendant in the prior action and in the action before the court at its expense.

As demonstrated above, Jones is not the indemnitor of Peden; therefore, Restatement, (Second), Judgments, § 57, also relied on by plaintiff, which deals with the effect on an indemnitor of a judgment against an indemnitee, is clearly not applicable.

It therefore appears that the only viable cause of action that plaintiff ever had against Jones is barred by the applicable Pennsylvania Statute of Limitations. However, the plaintiff is precluded from even raising that issue now because as noted, the plaintiff never appealed the order of this Court of January 28, 1992, to that effect. *Cf. Fleet Consumer Discount Co. v. Graves,* 33 F.3d 242 (3d Cir.1994); *see also Phillip v. Clark,* 385 Pa.Super. 229, 560 A.2d 777 (1989), *recons. denied, reh'g denied,* 1989 Pa.Super. LEXIS 4093 (July 17, 1989), *Appeal denied,* 527 Pa. 649, 593 A.2d 421 (1990); *Cf. also Alberici v. Tinari,* 374 Pa.Super. 20, 542 A.2d 127 (1988), *appeal denied,* 534 Pa. 652, 627 A.2d 730 (1993); Restatement, (Second), Judgments, § 27.

Since there is neither federal liability nor contractual liability imposed upon Jones to pay the judgment against Peden's estate, the plaintiff's alternative contentions that, if any statute of limitations applies, it is either the statute of limitations for actions under 40 Pa.C.S.A. § 117, the statute of limitations for indemnification or the four-year statute of limitations for enforcement of judgments, or the four-year statute of limitations for private actions arising under federal statutes enacted after December 1, 1989, is without merit.

## Conclusion

Simply stated, there is no genuine issue as to any mutual fact and Jones is entitled to judgment as a matter of law.

While the theory of the plaintiff that the ICA and its underlying regulations should require that Jones as the ICC carrier/lessee be responsible for the judgment has some appeal, this Court has no authority to impose such liability.

Therefore, an order will be entered granting defendant's motion for summary judgment and denying plaintiff's motion for summary judgment.

## ORDER OF COURT

AND NOW, this 8th day of February, 1996, for the reasons set forth in the foregoing Memorandum Opinion, it is hereby **ORDERED AS FOLLOWS:**

(1) The **Motion for Summary Judgment of the Defendant, Jones Motor Company, Inc.,** (Document No. 26) is **GRANTED;**

(2) The **Motion of Plaintiff, Radman, for Summary Judgment Pursuant to F.R.C.P. 56** (Document No. 28) is **DENIED;**

**IT IS FURTHER ORDERED** that judgment is entered in favor of the defendant, Jones Motor Company, Inc., and against the plaintiff, Joel T. Radman.